# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH WHEAT, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0006-MU |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21-22 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the November 8, 2017 hearing before the Court, it is determined that the

Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

**I. Procedural Background**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on December 9, 2013, alleging disability beginning on October 1, 2008. (*See* Tr. 147-156.) His claims were initially denied on March 13, 2014 (Tr. 79-80) and, following Plaintiff's March 26, 2014 written request for a hearing before an Administrative Law Judge (*see* Tr. 90-91), a hearing was conducted before an ALJ on June 24, 2015 (Tr. 36-62).[2] On August 10, 2015, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits or supplemental security income. (Tr. 22-31.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Wheat retains the residual functional capacity to perform those medium jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 30 *with* Tr. 59-61). On September 11, 2015, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 18); the Appeals Council denied Wheat's request for review on July 27, 2016 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21-22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

[2] "The claimant[,] through his attorney[,] amended his alleged [onset] date of disability to March 13, 2013." (Tr. 26; *compare id. with* Tr. 46 (Plaintiff's attorney acknowledged during the hearing that Plaintiff agreed to amend his onset date to March 13, 2013)).

2

Plaintiff alleges disability due to left shoulder arthritis, chondromalacia patellae on the left, degenerative disk disease and spinal stenosis of the lumbar spine, and bursitis of the hips. In light of the issues raised by Plaintiff in his brief (*see* Doc. 14, at 2-8), the Court's principle focus is on the ALJ's residual functional capacity assessment.

> **2. The claimant has not engaged in substantial gainful activity since March 13, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> The claimant testified that he is working part time approximately 30 hours a work and every other weekend. However, the amount of earnings posted to the claimant's earnings record fall well below the guidelines for substantial gainful activity. Therefore, the claimant's income after his alleged onset date is not substantial gainful activity.
>
> **3. The claimant has the following severe impairments: left shoulder arthritis, chondromalacia patellae on the left, degenerative disk disease and spinal stenosis of [the] lumbar spine, [and] bursitis of [the] hips (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can frequently reach in all directions, frequently push and/or pull using arm and leg controls and frequently stoop, kneel, crouch, crawl, balance and climb ramps or stairs. However, the claimant can only occasionally climb ladders, ropes or scaffolds.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based

on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that he is unable to work due to stenosis, left eye injury, left leg nerve damage and PTSD. He stated that he is currently working but disabled.

The claimant indicated that he has problems lifting, squatting, bending, standing, reaching, walking, kneeling, and climbing stairs. He further indicated he has problems concentrating and completing tasks. The claimant stated that he does not handle stress well and has occasional nightmares, but can handle changes in routine. Despite his allegations, the claimant stated he is able to follow written and spoken directions without difficulty and take care of his personal needs. He reported that he does not shop, cook or do any household chores because of pain when standing. Despite this, he reported he is able to take care of his own finances and spends the day playing his guitar, reading the newspaper and visiting with friends. Although he does not drive, he will get rides to wherever he needs to go and stated he attends church regularly.

The claimant testified that he graduated from high school and is currently working part time. He stated that he makes less than $900 a month and only works approximately 30 hours a week. He further stated that his employer is working with him as they know his problems with his health. The claimant indicated he has called in on a few occasions because the pain was too severe to make it to work. However, he testified that he is

unable to work full time because of the pain in his shoulder, left leg and knee. The claimant indicated that he has pain just in sitting and when standing for long periods. On a typical day he will go to work, come home and watch television then go to bed. He stated that he does not drive because his driver's license is suspended. The claimant testified that he has to do some walking on his job but he is able to sit and rest when needed. He testified he can walk approximately 20 minutes, lift about 11 pounds and uses his right hand more because it is hard to use the left arm due to the problems he has with the left shoulder. The claimant indicated that he does not feel he could work full time due to the pain in his leg and his shoulder.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The medical records show that the claimant has been diagnosed with trochanteric bursitis in his hips bilaterally, chondromalacia left knee, lumbar stenosis, and pain in his left leg. The claimant presented with complaints of shocking pain across both hips and lower back, and stiffness in his legs. Physical examination revealed mild crepitation and pain on range of motion in the left knee, as well as tenderness to palpitation bilaterally over his hips. X-rays showed mild degenerative changes in the right hip and mild degenerative changes in the lumbar spine. The claimant was treated with narcotic and non-narcotic pain medication, which he stated, did not adequately relieve his pain. Treatment notes show the claimant continued to complain of pain in his back and hips and legs, x-rays were again obtained in October 2014, which showed degenerative disc disease and degenerative facet disease in the lumbar spine and mild degenerative arthritis in his left shoulder. Physical examination showed mild tenderness in the left shoulder but he was able to exhibit full range of motion with only mild pain on extension or reaching across chest. His treating physician noted he was able to lift overhead, rotate, etc. without problems and had no pain in his left knee. The claimant's medication dosage was adjusted to relieve the pain in his shoulder. Treatment notes further show the claimant presented a few times with complaints of pain in his lower back with intense muscle spasms, but he further reported he was working as an office custodian. Physical examination showed the claimant had some pain with range of motion in the lower back but had no pain in his shoulders, knees or hips at each of these visits.

The record contains a residual functional capacity crafted by a State agency Single Decision Maker (SDM). The undersigned gives no weight to this residual functional capacity because it is agency policy that findings made by SDM[]s are not opinion evidence that Administrative Law Judges should consider and address in their opinion . . . . Therefore, the undersigned gives no weight to the residual functional capacity crafted by the State agency SDM. Further, the undersigned is aware of the physical residual functional capacity assessment completed by a SDM. However, an SDM is not a medical source. Any similarities between the opinion of the SDM and the residual functional capacity established in this decision arise solely from the consistency of the evidence and not any reliance by the undersigned on the opinion of the SDM.

The undersigned has considered the claimant's impairments in the aforementioned residual functional capacity as the claimant has been limited to frequently reaching, pushing and pulling, and frequent stooping, kneeling, crouching, crawling, balancing, and climbing ramps or stairs. In determining that the claimant can frequently reach in all directions, frequently push and/or pull using arm and leg controls, frequently stoop, kneel, crouch, crawl, balance and climb ramps or stairs[,] the undersigned has considered the claimant's impairments of trochanteric bursitis in his hips bilaterally, chondromalacia left knee, and lumbar stenosis. The undersigned took into consideration the claimant's subjective complaints and the objective physical evidence and also limited the claimant to being able to only occasionally climb ladders, ropes or scaffolds. The undersigned notes that the residual functional capacity fully accommodates the claimant's impairments as the diagnostic testing and the clinical findings all reveal mild to minimal abnormalities and the residual functional capacity is consistent with this degree of abnormality.

The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners. Although the undersigned does not find the claimant at all times symptom free, the evidence does not support the degree of limitation the claimant alleges at any time since his amended alleged onset date. The undersigned considered the claimant's subjective complaints in the residual functional capacity assessment, which takes full account of the objective findings, incorporates the recommended limitations of the consultative and review physicians, and accords the claimant every reasonable benefit of the doubt. The undersigned finds the opinion of the Veterans Administration of no service[-]connected disabilities is persuasive and consistent with the medical evidence. In addition, the undersigned gives great weight to the opinion of Dr. Veits, the state agency consulting psychologist, who found that the claimant has

no severe mental impairments and no functional limitations arising from any mental impairment.

Further, the claimant testified that he is working as a floor technician, which is mainly janitorial work as he describes it. He stated that he works approximately 30 hours a week and is able to work through his pain. Although he testified that he does take time off work when the pain is too severe, he did not state that it was more than usually allowed by an employer, nor that he had been disciplined due to his absences. The claimant is currently performing work that is greater then the aforementioned residual functional capacity, and thus supports the undersigned's conclusion that he has the ability to perform a reduced range of medium exertional level work. The vocational expert classified the claimant's work as a floor cleaner/tech as medium, unskilled work.

In summary, after reviewing the clinical and objective findings in addition to the factors contained in SSR 96-7p, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but the statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible and are inconsistent with the totality of the evidence.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert testified that the claimant has past work as a floor cleaner/technician, DOT #381.687-010, unskilled mental demands, medium exertional level; and warehouse worker, DOT #922.687-058, unskilled mental demands, medium exertional level.

The vocational expert testified in response to a question accurately reflecting the residual functional capacity found herein that the claimant could not perform past work. Accordingly, the undersigned, after a review of the evidence of record and a comparison of past relevant work to the residual functional capacity, concurs with the testimony of the vocational expert as credible and finds that the claimant cannot perform past relevant work.

**7.     The claimant was born on September 5, 1960 and was 53 years old, which is defined as an individual approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.    .    .

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

*hospital cleaner*, DOT #323.687-010, 887,000 jobs in existence nationally;
*final assemble*, DOT #806.684-010, 997,000 jobs in existence nationally; and
*laundry worker*, DOT #361.684-014, 199,000 jobs in existence nationally.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 13, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 24, 26, 26-29 & 30 (internal citations omitted; emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as found here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips,*

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny Wheat benefits, on the basis that he can perform those medium, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, Wheat asserts two basic reasons the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's residual functional capacity determination is not supported by substantial evidence;[5] and (2) the ALJ reversibly erred in failing to develop the record because she did not order a consultative orthopedic examination. Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's first assignment of error, the Court has no reason to address Wheat's second assignment of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Sec. Admin.,* 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities,

---

[5] Under this broad umbrella, Plaintiff contends that the ALJ erred in utilizing the Veterans Administration's conclusion of no service-connected disabilities as support "for a less restrictive residual functional capacity." (Doc. 14, at 8.)

such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can frequently reach in all directions, frequently push and/or pull using arm and leg controls and frequently stoop, kneel, crouch, crawl, balance and climb ramps or stairs. However, the claimant can only occasionally climb ladders, ropes or scaffolds.**" (Tr. 26 (emphasis in original)).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to

conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all

---

[6] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the ALJ's RFC assessment cannot be found to be supported by substantial evidence because the ALJ does not explain, when summarizing the evidence of record and articulating the required linkage, how the medical evidence related to each of Plaintiff's impairments supports each component of her RFC assessment. Significantly, the ALJ does not anywhere attempt to "link" the medical evidence in the record related to Wheat's admittedly severe left shoulder arthritis impairment (*see* Tr. 24 (finding left shoulder arthritis to be a severe impairment[7])) to the RFC determinations that Wheat can "***frequently***" lift and carry objects weighing up to 25 pounds,[8] "***frequently***" reach in all directions, and "***frequently***" push and/or pull using arm controls (Tr. 26 (some emphasis supplied)).[9] Instead, the ALJ simply concludes that "[i]n determining that the claimant can frequently reach in all directions, frequently push and/or pull using arm and leg controls, frequently stoop, kneel, crouch, crawl, balance and ramps or stairs[,] the undersigned has considered the claimant's impairments of

---

[7] *See, e.g.,* 20 C.F.R. § 404.1520(c) (2017) (defining severe impairment as an impairment which "significantly limits [a claimant's] physical or mental ability to do basic work activities").

[8] This requirement/ability is "assumed" in the definition of medium work, the ALJ specifically finding that "**the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 46.967(c)**" (Tr. 26 (emphasis in original)). *See, e.g.,* 20 C.F.R. § 404.1567(c) (2017) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). Moreover, it is clear that "[a] full range of medium work requires standing or walking, off an on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10.

[9] "'Frequent' means occurring from one-third to two-thirds of the time." *See generally* SSR 83-10.

14

trochanteric bursitis in his hips bilaterally, chondromalacia left knee, and lumbar stenosis." (Tr. 28.) Because the ALJ failed to consider in this analysis Plaintiff's severe left shoulder arthritis,[10] this Court cannot find that the ALJ's RFC assessment provides an articulated linkage to the medical evidence of record,[11] and, therefore, this cause need be remanded to the Commissioner of Social Security for further consideration not inconsistent with this decision. Stated somewhat differently, the ALJ has failed to provide this Court with sufficient reasoning for determining that the proper legal analysis has been conducted.[12]

---

[10] As made clear by the hearing transcript, the ALJ was well aware of Plaintiff's left shoulder impairment. (Tr. 48 ("Q [by ALJ] Now, Mr. Wheat, you were telling me – is the real problem you're having, is it with your shoulder? A Well, my shoulder and my left leg, my knee.")). Therefore, the ALJ's failure to articulate the linkage between her RFC "determinations" and evidence of Plaintiff's severe left shoulder impairment is surprising and requires remand because the lack of "linkage" leaves this Court bereft of the ability to review the administrative decision in a meaningful way. Stated somewhat differently, where, as here, an ALJ does not clearly articulate the reasons for arriving at all of her RFC "findings," this Court cannot evaluate them for substantial evidentiary support. *Durham, supra,* at *3 n.4 ("[T]he court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds that the ALJ did not conduct the analysis the law requires [her] to conduct.").

[11] The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show **how** they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide **enough reasoning** for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)). Thus, by failing to "show h[er] work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

[12] There is an additional problem with the ALJ's decision that requires remand. The ALJ's conclusory statement that "[t]he claimant is currently performing work that is greater than the aforementioned residual functional capacity, and thus supports the undersigned's conclusion that he has the ability to perform a reduced range of medium exertional level work[]" (Tr. 33) is belied by the record. First, this statement wholly fails to take into account Plaintiff's testimony that his employer accommodates his impairments by allowing him to only "dump" the waste baskets, each weighing less than 11 pounds (Tr. 43, 49 & 52), and to take "sitting" breaks throughout the day (Tr. 51-53), activities which are certainly not "greater" than the ALJ's residual
(Continued)

# CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to

---

functional capacity. In addition, this statement by the ALJ is in serious "tension" with the testimony of the vocational expert ("VE"), who testified, based on the ALJ's second hypothetical—assuming, consistent with the ALJ's RFC determination, that the individual could perform medium work requiring frequent reaching in all directions, frequent pushing and pulling of arm and leg control, frequent stooping, kneeling, crouching, crawling, balancing and climbing ramps and stairs but only occasional climbing of ropes, ladders or scaffolding (*compare* Tr. 59-60 (second hypothetical) *with* Tr. 26 (RFC determination))—that Plaintiff would be capable of performing his past relevant cleaning job and warehouse work (Tr. 60); therefore, based on the VE's testimony, there again appears to be no "room" for the ALJ's statement that "[t]he claimant is currently performing work that is greater than the aforementioned residual functional capacity[.]" (Tr. 29.) Indeed, the undersigned finds it impossible to make the VE's testimony "fit" with the ALJ's conclusions in this case regarding the inability to perform past relevant medium work but ability to perform other medium work in the national economy. (*Compare* Tr. 60-61 *with* Tr. 26 & 29-30.) And, finally, the ALJ's statement in this regard is certainly not "helped along" by the ALJ's—as well as the VE's—consistent citation to DOT #381.687-010 to described Wheat's past work as a floor cleaner (*compare* Tr. 29 ("The vocational expert classified the claimant's work as a floor cleaner/tech as medium, unskilled work (DOT 381.687-010).") *with id.* ("The vocational expert testified that the claimant has past work as a floor cleaner/technician, DOT #381.687-010, unskilled mental demands, medium exertional level[.]") and Tr. 58 ("The floor cleaner, floor technician is medium, per the DOT. With an SVP of 2, which is unskilled. The DOT number is 381.687-010.")) inasmuch as #381.687-010 of the DOT supplies the description for Central-Supply Worker, an occupation falling within the light exertional category, *see* DOT #381.687-010.

The undersigned would simply note that, on remand, the ALJ should explain, or at least give context, to the following cursory statement: "The undersigned finds the opinion of the Veterans Administration of no service connected disabilities is persuasive and consistent with the medical evidence." (Tr. 28 (internal citation omitted)). If this statement is simply meant as recognition of the "fact" that the Plaintiff was found by the VA to have no service-connected disabilities (that is, no disabilities that first occurred during Wheat's service in the armed forces) that is all well and good; however, if this statement is meant as substantial support for the ALJ's RFC determination or, more importantly, the ultimate finding of "no disability" that is another matter altogether given that the Commissioner's own regulations provide that a decision by another governmental agency, like the VA, concerning whether an individual is disabled, based on that agency's own rules, does not constitute an SSA decision regarding whether the individual is disabled. 20 C.F.R. § 404.1504. In other words, since a VA's decision that an individual is disabled under its rules its not binding on the SSA, it begs the question how the SSA can utilize a VA's identification of "no service-connected disabilities" (in the perfunctory manner set forth above) as substantial support for either an RFC determination or a finding of no disability under the Social Security Act.

sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this 23rd day of January, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**